IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOE ROMERO, et al., | ) | No. CV-F-05-0484 REC DLB |
| | ) | |
|            Plaintiffs, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART PLAINTIFFS' |
|       vs. | ) | MOTION FOR CLASS |
| | ) | CERTIFICATION. |
| PRODUCERS DAIRY FOODS, INC., | ) | |
| | ) | (Doc. 15) |
|           Defendant. | ) | |
| | ) | |
| _____ | ) | |

On April 3, 2006, the Court heard Plaintiffs' Motion for Class Certification (the "Motion"). Upon due consideration of the written and oral arguments of the parties and the record herein, the Court GRANTS the Motion in part and DENIES it in part, as set forth herein.

**I.   Factual Background**

Plaintiffs in this case are employees of Defendant Producers Dairy Foods, Inc. ("Defendant"), who transport dairy products to Defendant's customers. Plaintiffs claim that their employer failed to pay them overtime wages due under federal and state law. Defendant is a Fresno-based company that produces milk and

1

other dairy products at its Fresno plant.  It distributes the
products it produces through its shipment facilities in Tulare,
Fresno, Ceres, Sacramento, San Leandro, Castroville, San Luis
Obispo, Ukiah, Anderson, and Chico.  Over the last four years,
Defendant has employed over 100 drivers.

Employees classified as "Route Sales Drivers" distribute
Defendant's products from the distribution facilities to
customers, such as restaurants, markets, chain stores, and
hospitals.  The Route Sales Drivers' Job Description indicates
that they are expected perform a number of tasks.  Nelson Decl.
Ex. A.  In addition to delivering products, Route Sales Drivers
collect money from customers and create a record of the
transaction.  Route Sales Drivers also place the items that they
deliver on customers' shelves and pick up empty containers or
unsold merchandise.  Route Sales Drivers are also responsible for
loading, cleaning, and maintaining their trucks.

The extent to which Route Sales Drivers engage in sales
activities is a matter of vigorous dispute.  Route Sales Drivers'
duties as laid out in the Job description include calling on
prospective customers to solicit new business, selling new items
to current customers, and informing regular customers of new
products or services.  Nelson Decl. Ex. A.  Declarations of two
Route Sales Drivers that Plaintiffs submit indicate that they
were not responsible for making sales to old customers or
soliciting new customers.  Parker Decl. ¶ 36; Jeanes Decl. ¶ 24.
It is undisputed that managers and sales representatives, who are

2

also employed by Defendant, have a responsibility to increase sales of Defendant's products.

Defendant also employs Relief Drivers who fill in for Route Sales Drivers who are unavailable to work.  Route Sales Drivers and Relief Drivers are compensated based on a single incentive-based pay schedule, which includes a base salary combined with possibilities to earn commission.  They do not receive additional pay for each hour they spend over eight hours per day or forty hours per week.

Employees called "School Route Drivers" and "Specials Drivers" also deliver Defendant's products.  School Route Drivers make deliveries to schools.  Specials Drivers work during the promotion of specials or other special occasions.  Both School Route Drivers and Specials Drivers earn an hourly wage and are paid overtime for time in excess of forty hours per week.

## II.  Procedural History

On January 19, 2005, Plaintiffs Raymond Jeanes, Lawrence Heffington, Lauren Portillo, and Joe Romero (collectively "Named Plaintiffs") filed their Complaint in the United States District Court for the Northern District of California.  The Complaint alleged overtime violations under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. section 207, California Labor Code sections 201, 202, 204, 510, and 1198, and California Business and Professions Code sections 17200 et seq.  On April 6, 2005, the district court granted Defendant's motion to transfer venue to this Court.

3

1    On February 17, 2006, Plaintiffs moved to certify two

2 classes:  an opt-in collective action under FLSA, 29 U.S.C.

3 section 216(b), and an opt-out class action under Rule 23(b)(3)

4 of the Federal Rules of Civil Procedure.  Plaintiffs submitted

5 declarations supporting class certification as well as a document

6 that they proposed the Court order distributed to class members

7 to give them notice of the actions.  On March 10, 2006, Defendant

8 filed its Opposition to both classes, along with supporting

9 declarations.  On March 25, Plaintiffs filed their Reply, along

10 with a supplemental declaration and objections to Defendant's

11 declarations.[1]

12 **III. Opt-In Action under FLSA**

13    Plaintiffs ask the Court to certify an opt-in collective

14 action under the Fair Labor Standards Act of 1938 ("FLSA").  The

15 proposed class is:

16          All persons who are or were employed by
            Producers Dairy as RSDs and equivalent
17          delivery positions who worked in excess of
            forty (40) hours in a work week in the State
18          of California at any time from January 19,
            2002 to the present and who were not paid
19          overtime compensation for those excess hours.

20 Mot. 12:22-25.

21    **A.   Legal Standard**

22    The FLSA establishes a cause of action by an employee

23

24    [1]Plaintiffs object to a variety of passages in the
declarations Defendant submits.  Because none of these objections
25 would change the Court's decision on this Motion, the Court need
not rule on them at this time.  <u>Leuthold v. Destination Am., Inc.</u>,
26 224 F.R.D. 462, 466 (N.D. Cal. 2004).

4

against an employer who fails to pay overtime wages.  <u>See</u> 29
U.S.C. § 207.  Under 29 U.S.C. section 216(b) ("Section 216(b)"),
an employee who files such a suit under FLSA may bring a
collective action on behalf of "employees similarly situated."
<u>Doe v. Advanced Textile Corp.</u>, 214 F.3d 1058, 1064 (9th Cir.
2000).  Each employee who wishes to join the action must opt in
to the suit by filing  a consent to sue with the district court.
<u>Id.</u>

    The district court has discretion to determine whether a
collective action is appropriate.  <u>Leuthold v. Destination Am.,
Inc.</u>, 224 F.R.D. 462, 466 (N.D. Cal. 2004).  A court must decide
whether the proposed lead plaintiffs and the proposed collective
action class are "similarly situated" for purposes of Section
216(b).  <u>Id.</u>  The burden of making this showing is on the
Plaintiffs.  <u>Id.</u>

    FLSA does not define the term "similarly situated," and the
Ninth Circuit does not appear to have addressed the issue.  <u>Id.</u>
District courts have addressed three different approaches to
determining whether plaintiffs are similarly situated: (1) a two-
tiered case-by-case approach, (2) the incorporation of the
requirements of Rule 23 of the current Federal Rules of Civil
Procedure, or (3) the incorporation of the requirements of the
pre-1966 version of Rule 23 for "spurious" class actions.  <u>See
Thiessen v. GE Capital Corp.</u>, 267 F.3d 1095, 1103 (10th Cir.
2001).

    According to district courts that have addressed the issue,

the majority of courts have adopted the two-tiered approach. Leuthold, 224 F.R.D. at 467; Wynn v. NBC, 234 F. Supp. 2d 1067, 1082 (C.D. Cal. 2002). The Eleventh Circuit has also endorsed this approach. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001) ("The two-tiered approach to certification of § 216(b) opt-in classes described above appears to be an effective tool for district courts to use in managing these often complex cases, and we suggest that district courts in this circuit adopt it in future cases."). Moreover, this is the approach that this Court has taken in previous actions under Section 216(b). See, e.g., Aguayo v. Oldenkamp Trucking, CV-04-6279 (applying this approach and noting that "this is the analysis the Court has employed in prior similar actions").

The parties do not discuss the merits of the various approaches, though Defendant concedes that the FLSA requirements are "not as strict" as those under Rule 23. Opp'n 5:8-12. The Court therefore will use the two-tiered approach taken by the majority of district courts to address the issue and taken previously by this Court.

The first decision under the two-tiered approach concerns whether the potential class should be given notice of the action. Leuthold, 224 F.R.D. at 467. A court should base this decision on the pleadings and any affidavits the parties submit. Id. The decision is made under a "fairly lenient standard" and the usual result is conditional class certification. Id.; see Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) (holding that the

1  "similarly situated" requirement is less stringent than that for

2  joinder under Rule 20(a) or for separate trials under Rule

3  42(b)).   The Eleventh Circuit has described the plaintiffs'

4  burden as "demonstrating a 'reasonable basis' for their claim of

5  class-wide discrimination." <u>Grayson</u>, 79 F.3d at 1097.

6  Plaintiffs may make this showing "by making substantial

7  allegations of class-wide discrimination, that is, detailed

8  allegations supported by affidavits which 'successfully engage

9  defendants' affidavits to the contrary.'" <u>Id.</u>

10      The second tier of analysis occurs once discovery is

11  complete and the case is ready to be tried, generally triggered

12  by defendant's motion to decertify the class. <u>Leuthold</u>, 224

13  F.R.D. at 467.  At that point, a court must make a factual

14  determination  regarding the propriety and scope of the class,

15  based on the following factors:  "(1) the disparate factual and

16  employment settings of the individual plaintiffs; (2) the various

17  defenses available to the defendants with respect to the

18  individual plaintiffs; and (3) fairness and procedural

19  considerations." <u>Id.</u>; <u>Thiessen</u>, 267 F.3d at 1103.  If the court

20  then decides on the basis of the complete factual record that the

21  plaintiffs are not similarly situated, it may decertify the class

22  and dismiss the opt-in plaintiffs without prejudice. <u>Leuthold</u>,

23  224 F.R.D. at 467.

24      Where discovery is complete, courts sometimes bypass the

25  first tier in favor of immediately making the second-tier factual

26  determination. <u>Id.</u> at 468.  Defendant does not ask the Court to

7

1  proceed to the more stringent second-tier analysis, but rather

2  concedes that at this stage Plaintiffs must only make a "limited

3  showing."  Opp'n at 6:1-3.  Furthermore, it does not appear that

4  the factual record is sufficient for the Court to make a thorough

5  factual determination.  The Court will limit its analysis to a

6  first-tier determination.  Defendant may move to decertify the

7  class at the close of discovery.

8      **B.   Plaintiffs' Showing**

9      The allegations of the Complaint establish the basis for a

10 collective action.  Plaintiffs are drivers employed by Defendant.

11 Compl. ¶ 9.  During the liability period, Plaintiffs worked in

12 excess of forty hours in a week.  Compl. ¶ 16.  Plaintiffs were

13 not paid at a rate of one and one-half times their regular rate

14 for their overtime hours.  Id.  The Court finds that these

15 allegations are sufficiently detailed and set forth a basis for

16 Defendant's liability under FLSA.

17     Plaintiffs submit the declarations of Raymond Jeanes, a

18 current Route Sales Driver, and Cecil R. Parker, a former Route

19 Sales Driver, in support of certification of a collective action.

20 Mr. Jeanes has been an employee of Defendant for approximately

21 four years.  Jeanes Decl. ¶ 2.  Mr. Parker was an employee for

22 approximately thirteen years from 1992 to 2005.  Parker Decl.

23 ¶ 2.  Mr. Jeanes and Mr. Parker both contend that they have

24 worked over forty hours in a week but have never been paid extra

25 for the overtime hours.  Jeanes Decl. ¶ 31; Parker Decl. ¶ 30.

26 Both employees also state that their fellow employees worked over

8

forty hours per week and did not receive overtime pay.  Jeanes
Decl. ¶¶ 36, 40; Parker Decl. ¶¶ 35, 38.

**C.  "Outside Salesman" Exemption**

Defendant does not dispute that Plaintiffs' allegations and
declarations amount to "substantial allegations" of FLSA
violations against the named Plaintiffs and other similarly
situated employees.  See Grayson, 79 F.3d at 1097.  Defendant
does contend that Route Sales Drivers who comprise the proposed
collective action fall within the "outside salesman" exemption of
the FLSA.  See 29 U.S.C. § 213(a)(1).  Defendant concedes,
however, that "for purposes of the limited showing that must be
made for an opt-in collective action under the FLSA, Producers
recognizes that this defense is a matter of individualized
proof."  Opp'n 6:1-3.  Mr. Parker declares that Route Sales
Drivers "were not responsible for and did not regularly make
sales to customers."  Parker Decl. ¶ 36.  Mr. Jeanes avers that
he "was not responsible for soliciting sales from entities that
were not customers."  Jeanes Decl. ¶ 24.  Route Sales Drivers
were instead instructed to refer questions regarding
modifications in prices or orders to a manager or a sales
representative.  Parker Decl. ¶ 21; Jeanes Decl. ¶ 26.
Plaintiffs' declarations are sufficient to establish that the
"outside salesman" exemption does not preclude conditional
certification.

**D.    Description of the Collective Action**

Defendant claims that the proposed FLSA collective action is overbroad and ill-defined.

**1.    School Route Drivers and Specials Drivers**

Defendant points to particular subgroups of Defendant's employees that it contends fall outside the definition of the proposed collective action.  Defendant submits a declaration of its Director of Administration stating that it paid School Route Drivers and Specials Drivers on an hourly basis along with overtime pay for time in excess of forty hours per week.  See Sewill Decl. ¶ 3.  Consequently, Defendant contends, these groups of employees should be expressly excluded from the collective action.

Plaintiffs do not dispute that School Route Drivers and Specials Drivers are paid on an hourly basis and receive an overtime premium for all hours worked beyond forty in a single work week.  Nor do Plaintiffs contend that this pay arrangement functions similarly to the "company-wide commission schedule" that covers Route Sales Drivers and Relief Drivers.  Reply 1:21-2:1.  Plaintiffs do not claim that any of the Named Plaintiffs have ever worked as School Route Drivers or Specials Drivers.  In any event, Plaintiffs do not point to any portions of the declarations they have submitted that indicate that School Route Drivers and Specials Drivers are similarly situated with the Named Plaintiffs with respect to their compensation for time beyond forty hours per week.

10

1   Plaintiffs contend that "it is not known at this point
2   whether School Route Drivers or Special Drivers ever fill in for
3   an RSD."  Reply 6:27-28.  Plaintiffs appear to place the burden
4   on Defendant to show that these groups of employees are not
5   similarly situated to Route Sales Drivers, pointing out that none
6   of Defendant's declarations have claimed "that School Route
7   Drivers or Specials drivers *never* fill in for a Route Sales
8   Driver or Relief Driver."  Reply 6:28-7:2 (emphasis in original).
9   Plaintiffs do not explain how "filling in" for Route Sales
10  Drivers would cause these groups to be similarly situated with
11  Route Sales Drivers under FLSA's overtime requirements.  It
12  appears that Plaintiffs are assuming that while filling in,
13  School Route Drivers and Specials Drivers would be compensated
14  under the Route Sales Driver commission-based schedule.  Nothing
15  in the record supports this assumption.  Plaintiffs' burden at
16  this stage is "fairly lenient."  See Leuthold, 224 F.R.D. at 467.
17  They must nonetheless provide some support, in the form of
18  affidavits, to establish the factual predicate for their
19  assertion that School Route Drivers and Specials Drivers meet the
20  "similarly situated" requirement.  Grayson, 79 F.3d at 1096.  The
21  Court will not include parties in a collective action based on
22  Plaintiffs' unsupported speculation that School Route Drivers or
23  Specials Drivers fill in for Route Sales Drivers, rendering those
24  groups somehow similarly situated to the Named Plaintiffs with
25  respect to overtime pay.
26

11

### 2. Relief Drivers

Defendant does not contend that Relief Drivers are not similarly situated to Route Sales Drivers.  It is undisputed that Relief Drivers, like Route Sales Drivers, are paid on a base salary and commission earnings basis.  Sewill Decl. ¶ 2.  The Court finds that Relief Drivers are similarly situated to Route Sales Drivers.

### 3. Drivers in Castroville and San Luis Obispo

Citing Frank Sewill's declaration, Defendant claims that Route Sales Drivers based at Defendant's San Luis Obispo and Castroville facilities never worked more than forty hours per week.  See Sewill Decl. ¶ 5.  In response, Plaintiffs submit the timecards for two Route Sales Drivers based in Castroville and one based in San Luis Obispo that indicate each worked over forty hours in a week.  Nelson Supp. Decl. ¶¶ 14-18, Exs. C, D, E, F. Plaintiffs have made a sufficient showing that Route Sales Drivers based in Castroville and San Luis Obispo are similarly situated to the Named Plaintiffs.

### 4. Statute of Limitations

Defendant also contends that the time period for the collective action should be limited to recovery for work performed since January 19, 2003.  While the statute of limitations for violation of the FLSA is ordinarily two years, for willful violations it is extended to three years. 29 U.S.C. § 255(a); Brock v. Superior Care, Ind., 840 F.2d 1054, 1061 (2d Cir. 1988).

1    Plaintiffs allege that "Defendant was advised by skilled and
2    competent lawyers and other professionals, employees and advisors
3    knowledgeable about the requirements of the FLSA . . . regarding
4    the payment of overtime compensation to eligible employees."
5    Compl. ¶ 14.  Plaintiffs contend that Defendant knew it had the
6    duty to pay Plaintiffs overtime, was financially able to make
7    such payments, "but willfully, knowingly and intentionally failed
8    and refused to do so."  Id.  Defendant does not submit any
9    evidence that establishes that its acts were not willful.  At
10   this stage, it is unclear what evidence Plaintiffs could
11   conceivably submit to establish that Defendants acted willfully.
12   Given the lenient standard that Plaintiffs face at this stage and
13   the difficulty of establishing, by affidavits, Defendant's
14   willful behavior, the Court finds that the allegations of willful
15   conduct in the Complaint, combined with the declarations
16   evidencing FLSA violations are sufficient.  Therefore, for the
17   purpose of conditional certification, the three-year statute of
18   limitations applies.

19            **5.    "Equivalent Delivery Positions"**

20       Defendant asserts that the inclusion in the collective
21   action of "equivalent delivery positions" to Route Sales Drivers
22   is without meaning and is nonspecific.  The Court agrees that
23   this phrase introduces ambiguity in the class, especially given
24   the Court's conclusion that School Route Drivers and Specials
25   Drivers do not meet the class criteria.  At oral argument,
26   Plaintiffs indicated that, at its broadest, the phrase "RSDs and

13

equivalent delivery positions" refers to Route Sales Drivers,
Relief Drivers, School Route Drivers, and Specials Drivers.

Plaintiffs have met their burden to show that two groups of
Defendant's employees are similarly situated to the Named
Plaintiffs:  Route Sales Drivers and Relief Drivers.
Accordingly, the Court conditionally certifies a collective
action described as follows:

> All persons who are or were employed by
> Producers Dairy as Route Sales Drivers and
> Relief Drivers who worked in excess of forty
> (40) hours in a work week in the State of
> California at any time from January 19, 2002,
> to the present and who were not paid overtime
> compensation for those excess hours.

**IV.   Opt-Out Class under Rule 23(b)(3)**

Plaintiffs ask the Court to certify their second through
sixth causes of action as an opt-out class under Rule 23 of the
Federal Rules of Civil Procedure.  They define the proposed class
as follows:

> All persons who are or were employed by
> Producers Dairy as RSDs and equivalent
> delivery positions who worked in excess of
> eight (8) hours in a day and/or forty (40)
> hours in a work week in the State of
> California at any time from January 19, 2001
> to the present who were not paid overtime
> compensation for those excess hours.

Mot. 18:3-6.

**A.   Rule 23(a) Prerequisites**

Federal Rule of Civil Procedure 23(a) enumerates four
prerequisites to class certification:

> One or more members of a class may sue or be
> sued as representative parties on behalf of

14

1   all only if (1) the class is so numerous that
    joinder of all members is impracticable, (2)
2   there are questions of law or fact common to
    the class, (3) the claims or defenses of the
3   representative parties are typical of the
    claims or defenses of the class, and (4) the
4   representative parties will fairly and
    adequately protect the interests of the
5   class.

6   Plaintiffs bear the burden of establishing each of the Rule 23(a)

7   prerequisites. Hanon v. Dataproducts Corp., 976 F.2d 497, 508

8   (9th Cir. 1992) (citing Mantolete v. Bolger, 767 F.2d 1416, 1424

9   (9th Cir. 1985)). In evaluating whether Plaintiffs have met

10  their burden, a court should accept the substantive allegations

11  of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901

12  n. 17 (9th Cir. 1975).

13      1.   Numerosity

14      A Rule 23 class must be so numerous that joinder of all

15  members individually is "impracticable." Fed. R. Civ. P.

16  23(a)(1). Defendant admits in its answer that it employed over

17  "one hundred or more persons as route drivers during the last

18  four years." Answer ¶ 12(a). A class with over forty members is

19  presumed to satisfy the numerosity prerequisite. Consol. Rail

20  Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)

21  (citing 1 Newberg On Class Actions, (2d ed.) § 3.05); see also

22  Mathis v. Bess, 138 F.R.D. 390, 393 (S.D.N.Y. 1991) (joinder

23  impracticable solely because putative class had 120 members).

24  The numerosity requirement is more readily met where a class

25  contains employees suing their present employer. Mullen v.

26  Treasure Chest Casino, L.L.C., 186 F.3d 620, 625 (5th Cir. 1999).

15

This is because class members may be unwilling to sue their employer individually out of fear of retaliation.  Id.  The Court finds that the class meets the numerosity prerequisite.

### 2.   Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class."  The Ninth Circuit construes the commonality prerequisite permissibly.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  All questions of law and fact need not be common.  Id.  Rather, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  Id.; see In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 166 (2d Cir. 1987) (holding that the commonality requirement of Rule 23(a)(2) was satisfied because the military contractor defense was common to all of the plaintiffs' claims).

### a.   Common Pay Scheme

Route Sales Drivers and Relief Drivers are paid under the same commission schedule.  Opp'n 3:5-10; Reply 1:21-2:1. Consequently, employees in both groups are treated similarly by Defendant with respect to overtime pay.  It is undisputed that School Route Drivers and Specials Drivers are paid under a separate scheme that involves hourly wages and overtime pay.  The Court finds that claims of School Route Driver and Specials Drivers do not raise questions of law or fact in common with the class representatives' claims.  Plaintiffs' unsupported assertion

16

that School Route Drivers and Specials Drivers may fill in for
Route Sales Drivers at times does not meet their burden to show
that common questions are present.  Accordingly, School Route
Drivers and Specials Drivers are not properly included in the
putative class.

### b.   Vehicle Weight Exemption

Defendant all but concedes satisfaction of the commonality
prerequisite by contending that a single defense bars the claims
of every potential class member.  Defendant argues that the Route
Sales Drivers, Relief Drivers, School Route Drivers, and Specials
Drivers are all exempt from the overtime requirements under
California law because the gross vehicle weights of their trucks
exceed 26,001 pounds.  Defendant cites in support Paragraph 3(L)
of Industrial Welfare Commission Order No. 9-2001;  title 49 of
the Code of Federal Regulations, sections 395.1 to 395.13; and
title 13 of the California Code of Regulations, subchapter 6.5,
sections 1200 et seq.  Defendant states that it is undisputed
that the trucks of all of the proposed class members exceed
26,001 pounds, and supports this contention with evidence in the
form of the registration cards Defendant has produced in response
to an interrogatory.  See Hipp Decl. Ex. D.  Defendant contends,
in essence, that a legal question exists the resolution of which
potentially precludes the claims of the entire class based on
undisputed facts.  This issue alone is sufficient to satisfy the
commonality requirement.

### c.   "Outside Salesman" Exemption

Defendant also argues that class members' claims turn on case-by-case, fact specific analyses of each individual's sales efforts and whether each is exempt from overtime requirements as an outside sales person.  Under California Labor Code section 1171, "any individual employed as an outside salesman" may not recover for wages, hours, and working conditions violations, such as those Plaintiffs allege under Labor Code section 1198. Ramirez v. Yosemite Water Co., 20 Cal. 4th 785, 789 (1999).  This exempts from California overtime laws any employee "who customarily and regularly works *more than half the working time* away from the employer's place of business selling tangible or intangible items or obtaining orders or contracts for products, services or use of facilities."  Id. at 795 (emphasis in original).

In Ramirez, the court addressed the relevant factors in determining whether a route sales representative who delivered bottled water to customers was an "outside salesperson" exempt from California overtime laws.  Id. at 802.  The court adopted a quantitative approach that compares an employee's time spent "selling" to time spent performing other activities.  Id. at 801. Certain job tasks, such as travel time, should be apportioned according to types of activities that they facilitate.  Id.  So, for example, if an employee travels to a destination to engage in both sales and nonsales activities, the travel time must be apportioned among sales and nonsales work.  Id.  The court

18

explained that the analysis should not focus either solely on the employer's job description or on the employee's actual work pattern:

> A trial court, in determining whether the employee is an outside salesperson, must steer clear of these two pitfalls by inquiring into the *realistic* requirements of the job.  In so doing, the court should consider, first and foremost, how the employee actually spends his or her time.  But the trial court should also consider whether the employee's practice diverges from the employer's realistic expectations, whether there was any concrete expression of employer displeasure over an employee's substandard performance, and whether these expressions were themselves realistic given the actual overall requirements of the job.

Id. at 802 (emphasis in original).

Justice Werdegar, writing for Supreme Court of California, clarified the amenability of the factual inquiry in Ramirez to class action treatment.  Sav-On Drug Stores, Inc. v. Super. Ct., 34 Cal. 4th 319, 335-38 (2004).  The court noted that the first part of the Ramirez inquiry, which involves "any dispute over 'how the employee actually spends his or her time,' of course, has the potential to generate individual issues."  Id. at 336-37 (internal citations omitted) (quoting Ramirez, 20 Cal. 4th at 802).  On the other hand, "considerations such as 'the employer's realistic expectations' and 'the actual overall requirements of the job' are likely to prove susceptible of common proof."  Id. at 337 (internal citations omitted) (quoting Ramirez, 20 Cal. 4th at 802).  Thus, a defendant's invocation of the outside salesman exemption does not bar class certification.

Justice Werdegar went on to demonstrate the problematic nature of a rule to the contrary. Id. at 338. If individual overtime exemption issues could preclude class certification, the proponent of an overtime class action would be forced to prove that the entire class was nonexempt whenever a defendant raises the affirmative defense of exemption. Id. Under California law, the employer bears the burden of showing that an employee is exempt from overtime laws. Id. (citing Ramirez, 20 Cal. 4th at 794-95). Requiring a plaintiff to demonstrate that class members are not exempt would effectively reverse that burden. Id.

The Court finds that determining whether Plaintiffs are outside salespeople will likely require the Court to make a single factual finding regarding the requirements and realistic expectations Defendant had regarding Route Sales Drivers' job performance. See id. at 337. Were the Court to rely solely on the "actual activity" of Route Sales Drivers, an employee assigned to sell might evade the outside sales exemption by his own "substandard performance." Id. (quoting Ramirez, 20 Cal. 4th at 802). In fact, Defendant has already contended, in the context of its typicality argument, that Mr. Parker and Mr. Jeanes's failure to engage in sales work "sets them well apart from the rest of the Route Sales Drivers who performed sales work and who understood that their primary job responsibility was to sell products from the full line of Producers' dairy products." Opp'n 10:4-6. The Court will likely be required to make a finding as to whether a Route Sales Driver who engages in little

20

1   or no sales work falls outside of Defendant's realistic

2   expectations.  Unless new evidence comes forth indicating that

3   Defendant had different expectations regarding different Route

4   Sales Drivers' duties — an unlikely proposition given the uniform

5   nature of the compensation scheme — this finding will be

6   identical with respect to each of the Plaintiffs.

7           Contrary to Defendant's contention, class treatment of the

8   outside sales exemption would not entail altering the substantive

9   law.  Rather, the Supreme Court of California has concluded that,

10  consistent with California overtime statutes, courts may couple

11  uniform findings on common issues with "innovative procedural

12  tools" that can efficiently resolve individual questions.  See

13  Sav-On Drug Stores, 34 Cal. 4th at 337 & n. 12 (suggesting,

14  citing federal district court cases, that a trial court could

15  determine individual overtime entitlement through separate

16  judicial or administrative miniproceedings on individualized

17  issues, hearings before a special master, or calculation of

18  damages based on a standard formula).  Thus, Defendant's

19  invocation of the "outside salesperson" exemption does not

20  preclude a finding that common questions of law and fact exist.

21                  d.    Commission Salespersons

22          Defendant also argues that a decision about whether Route

23  Sales Drivers are exempt as commission salespersons will be fact-

24  specific and will differ according to the circumstances of each

25  Route Sales Driver.  California overtime statutes do not apply to

26  any employee who earns one and one-half times the minimum wage if

21

more than one-half of the employee's compensation represents
commissions.  Ramirez, 20 Cal. 4th at 803.  "Commission" is
defined as follows:  "Commission wages are compensation paid to
any person for services rendered in the sale of such employer's
property or services and based proportionately upon the amount or
value thereof."  Id. (quoting Cal. Lab. Code § 204.1).  Thus, if
a compensation scheme meets two requirements, it constitutes
"commission wages":  "First, the employees must be involved
principally in selling a product or service, not making the
product or rendering the service.  Second, the amount of their
compensation must be a percent of the price of the product or
service."  Id. at 804 (quoting Keyes Motors, Inc. v. Div. of
Labor Standards Enforcement, 197 Cal. App. 3d 557, 563 (1987)).

        Defendant does not dispute that all Route Sales Drivers were
paid under a single compensation scheme.  Rather, Defendant
submits the declaration of Anastasio Perez, who states that Route
Sales Drivers "were all paid under the same sales commission
program."  Perez Decl. ¶ 5; see also Montoya Decl. ¶ 5 ("[W]e
were all paid under the same sales commission program . . . .").
Nor does Defendant dispute Plaintiffs' contention that all Route
Sales Drivers share the same job description.  Defendant contends
that the amount of money that a Route Sales Driver actually
earned would depend on that driver's personal sales effort.
Consequently, Defendant argues, this case will turn on individual
proof of the work performed by each Route Sales Driver.

        It appears to the Court that, as with the "outside salesman"

1   exemption, a determination of whether Route Sales Drivers are

2   paid commission wages under California law will turn on issues of

3   law and fact common to all employees.  The inquiry into whether

4   Route Sales Drivers are principally involved in selling a product

5   or are merely rendering a service should produce an answer common

6   to all Route Sales Drivers.  Route Sales Drivers do sell

7   different amounts of products to different customers at different

8   times.  Nevertheless, it seems that the Court will necessarily

9   decide whether a delivery of product to a customer, combined with

10  certain financial incentives of the commission plan, amounts to

11  "principally selling a product."  See Ramirez, 20 Cal. 4th at

12  804.

13      The Court will be required to make certain findings about

14  the nature of the compensation scheme.  The Court may, for

15  instance, be called upon determine whether a base salary combined

16  with incentives for selling certain products makes compensation

17  "a percent of the price of the product or service."  See id.

18  (remanding with instructions that the trial court determine

19  whether the flat-rate portion of an incentive-based compensation

20  scheme "represented a 'draw' against future bottle sales"

21  properly characterized as commission).  The Court will not

22  relieve Defendant, merely by the accident of the class action

23  device, of its burden to prove the commission salesperson

24  exemption as an affirmative defense.  Cf. Sav-On Drug Stores, 34

25  Cal. 4th at 338.  After deciding the common issue concerning

26  which parts of Defendant's pay scheme, if any, are properly

23

1  categorized as commission, an individual determination can then

2  be made of how much of each employee's pay represents commission

3  wages.

4      The Court finds that, with the exception of School Route

5  Drivers and Specials Drivers, the proposed class satisfies the

6  commonality requirement.

7          **3.   Typicality**

8      The typicality prerequisite ensures that interests of the

9  named representative align with the interests of the class.

10 Hanon, 976 F.2d at 508.  Typicality tests "whether other members

11 have the same or similar injury, whether the action is based on

12 conduct which is not unique to the named plaintiffs, and whether

13 other class members have been injured by the same course of

14 conduct."  Id.  A court should consider the nature of the claim

15 or defense of the class representative, rather than the specific

16 facts from which it arose or for which relief is sought.  Id.

17 For instance, typicality may be lacking where the putative class

18 representative is subject to unique defenses that might

19 jeopardize the recovery of absent plaintiffs.  Id.; see, e.g.,

20 Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner &

21 Smith, Inc., 903 F.2d 176, 179-80 (2d Cir. 1990) (denying class

22 certification for lack of typicality where actions of class

23 representative subjected it to "several unique defenses").

24     Defendant argues that Mr. Jeanes's and Mr. Parker's

25 representations in their declarations that they never did sales

26 work sets them apart from other Route Sales Drivers.  Defendant

24

does not explain how such a factual difference would jeopardize
the interests of any absent class member.  To the contrary, Mr.
Jeanes's and Mr. Parker's representations that they did not
engage in sales activity, if true, indicate that they are not
subject to defenses that might bar the claims of some absent
class members, such as Mr. Perez and Art Montoya, who assert that
they are salespersons.  Thus, even if Mr. Jeanes and Mr. Parker
behaved differently on the job than other absent class members,
those absent individuals will not find their claims barred on
account of those differences.

    At base, it appears that the Named Plaintiffs seek relief
based on the same conduct of Defendant:  the failure to pay
overtime wages.  Defendant does not contend that the Named
Plaintiffs' claims arise from conduct that Defendant directed at
them alone.  It is undisputed that all Route Sales Drivers were
paid under a single compensation scheme and thus appear to have
been treated similarly.  Accepting the declarants' assertions, it
appears that Mr. Perez and Mr. Montoya, by substantially altering
their customer interactions in response to financial incentives,
reacted differently than Plaintiffs Mr. Jeanes and Mr. Parker to
the same compensation scheme.  This is not the sort of asymmetry
that jeopardizes absent class members and precludes a finding of
typicality.  See Gary Plastic Packaging, 903 F.2d at 179-80.

    Defendant also attacks the typicality of the Named
Plaintiffs' claims on the grounds that Mr. Romero worked as a
supervisor, not a Route Sales Driver, from October 2002 to

25

January 2004.  Nothing before the Court suggests that this disparity will prejudice absent class members.  Defendant does not contend that the tenure of the other Named Plaintiffs are atypical of absent individuals.  Nor does Defendant object to the inclusion of Mr. Jeanes, who ceased work as a Route Sales Driver in 2003, as a Named Plaintiff.

The Court finds that a range of Named Plaintiffs with differing employment dates best represents absent class members.  It is inevitable that, of the dozens of absent class members, some were hired during the statutory period, some ceased employment before the end of the period, and some spent time in other positions with Defendant or outside the company altogether.  The multiple backgrounds of the Named Plaintiffs help ensure that they will protect the interests of absent class members of varying circumstances.

### 4.   Adequacy of Representation

The adequacy of representation prerequisite under Rule 23(a)(4) has two criteria:  "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class."  Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).  There is no dispute as to this prerequisite.

### B.   23(b)(3) Requirements

Under Rule 23(b)(3), a court may certify a class action

26

where the prerequisites are met and "the court finds that the
questions of law or fact common to the members of the class
predominate over any questions affecting only individual members,
and that a class action is superior to other available methods
for the fair and efficient adjudication of the controversy."

### 1.   Predominance of Common Questions

Because no precise test can determine whether common issues
predominate, the Court must pragmatically assess the entire
action and the issues involved.  Rodriguez v. Carlson, 166 F.R.D.
465, 477 (E.D. Wash. 1996).  Common questions may predominate
where the resolution of a question common to the class would
significantly advance the litigation.  McClendon v. Continental
Group, Inc., 113 F.R.D. 39, 43-44 (D.N.J. 1986) (citing In re
School Asbestos Litigation, 789 F.2d 996, 1010 (3d Cir. 1986)); 5
James Wm. Moore et al., Moore's Federal Practice, § 23.45 (3d ed.
2005).

Where a central common defense may bar each of plaintiff's
claims, class action treatment is particularly apt.  This is
because "[i]f the defense succeeds, the entire litigation is
disposed of.  If it fails, it will not be an issue in the
subsequent individual trials."  In re Agent Orange, 818 F.2d at
167.

The existence of the potential overtime exemption for Route
Sales Drivers based on the weight of their trucks counsels
strongly in favor of class treatment in this case.  Defendant
asserts that this affirmative defense potentially bars all

27

1   recovery under California overtime statutes.   Furthermore,

2   Defendant claims that the facts that would trigger this defense

3   are undisputed.   Even if the relevant facts — the weight of the

4   Route Sales Drivers' trucks — are ultimately subject to dispute,

5   it appears they can be resolved with reference to simple forms of

6   proof.   See Hipp Decl. 7:13-17, Ex. D (Department of Motor

7   Vehicles Registration Cards bearing the model, make, class, type,

8   weight, and Vehicle Identification Number of each vehicle

9   operated by a Route Sales Driver).   A series of individual

10  actions in which the weight exemption is a central issue would be

11  a waste of judicial resources.   Regardless of the extent of the

12  other individual issues, this issue alone appears to dominate in

13  importance.

14       Other common issues also have the potential to expediently

15  resolve the claims of all Route Sales Drivers.   If Defendant

16  realistically expects that Route Sales Drivers spend most of

17  their time engaging in sales activities, then an inquiry into how

18  each of the Route Sales Drivers actually spends their time may be

19  unnecessary.   See Ramirez, 20 Cal. 4th at 802 ("[A]n employee who

20  is supposed to be engaged in sales activities during most of his

21  working hours and falls below the 50 percent mark due to his own

22  substandard performance should not thereby be able to evade a

23  valid exemption.")

24       Even if individualized proof is ultimately necessary to

25  determine whether a class member is entitled to recover, legal

26  questions on which these individual questions turn will be common

1   to the class.  The Court will need to differentiate between

2   activities of Route Sales Drivers that are properly characterized

3   as "selling a product or service" and those activities that are

4   merely amount to "rendering the service."  <u>See</u> <u>id.</u> at 804

5   (quoting <u>Keyes Motors</u>, 197 Cal. App. 3d at 563).  Litigating the

6   characterization of Route Sales Driver tasks over and over again

7   in individual actions would be impractical.  The same rationale

8   supports a class-wide determination of which parts of Route Sales

9   Driver pay are commission wages under California law.  <u>See</u>

10  <u>Ramirez</u>, 20 Cal. 4th at 804.

11      The individual issues that will remain if the common issues

12  do not resolve the case appear to be relatively straightforward

13  and subject to easy calculation.  Evaluating the amount of

14  overtime work performed and the amount of commission wages

15  received can likely be determined with reference to timecards and

16  payroll records.  The calculation of time spent on outside sales

17  activities could be more difficult, depending on how specifically

18  Route Sales Drivers account for their time.  However given the

19  purported uniformity of Route Sales Driver activities, it is

20  possible that the Court could determine whether sales activities

21  take up more than half of a Route Sales Driver's time with

22  reference to a sample of several Route Sales Drivers.  Even if

23  individual proceedings were necessary to determine the hours each

24  class member spent performing sales activities, class action

25  proceedings on the predominant common issues present substantial

26  litigation economies.

### 2.   Superiority of a Class Action

Rule 23(b)(3) sets forth factors a court may consider to determine whether certifying a class is superior:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Defendant does not dispute the superiority of class action treatment under these factors.

There is no indication that individual members of the class, other than the Named Plaintiffs, desire to individually control their case. Two Route Sales Drivers appear to be cooperating with Defendant in opposing class certification, inasmuch as they have submitted supporting declarations for Defendant. These Route Sales Drivers do not contend that they wish to control the litigation or disagree with the manner in which Plaintiffs are proceeding.

The Court is aware of no parallel litigation that adjudicates these issues. In past cases, this Court has not shied away from certifying a Rule 23(b)(3) class action simply because of the presence of an FLSA opt-in collective action in the same case. See, e.g., Aguayo v. Oldenkamp Trucking, CV-04-6279. Another district court has declined to certify a Rule 23(b)(3) class action, finding that proceeding on pendent state

30

law claims on an opt-in basis in the FLSA action was superior where defendant demonstrated substantial hostility against the lawsuit amongst potential class members.  Leuthold, 224 F.R.D. at. 469-71.  Other than the cooperation of some Route Sales Drivers with Defendant, no such hostility exists here.

The Rule 23(b)(3)(D) manageability inquiry "encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit."  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 164, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974).  Whether a case is manageable as a class action can be an "overriding consideration" in determining superiority.  Krehl v. Baskin-Robbins Ice Cream Co., 78 F.R.D. 108, 124 (C.D. Cal. 1978).  Even where individual issues exist, the value of treating them separately decreases as the commonality of issues increases.  See Epifano v. Boardroom Bus. Prods., Inc., 130 F.R.D. 295, 299 (S.D.N.Y. 1990) (class action treatment can be useful in "preventing a multiplicity and scattering of suits which essentially rely on the same legal theories and evidence").

There is a significant possibility that resolution of a common legal issue — the vehicle weight exemption — will resolve the entire action before trial.  Failing this, a legal determination of what components of Route Sales Drivers' pay are commission wages could result in some or all of the Route Sales Drivers' claims being resolved with reference to payroll records. Also, following a class-wide determination of which Route Sales

31

Driver job tasks amount to "sales activities," individual proceedings can determine whether these activities comprise more than half of an employee's time, triggering the outside sales exemption.  If none of the affirmative defenses succeed and Plaintiffs are entitled to recovery, the damages of each class member can be easily determined with reference to timecards.

The governing law and number of members of the putative class indicate that a class action would be manageable.  All of the claims are governed by the same state law.  See Castano v. Am. Tobacco Co., 84 F.3d 734, 743-44 (5th Cir. 1996) (finding that district court erred in failing to consider manageability problems caused by differences in state law).  The putative class is not so large that determination of certain facts particular to individuals will not be overly burdensome.  See Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1305 (9th Cir. 1990) (difficulty of calculating individual damages of 1349 undocumented Mexican workers made class action unfeasible).

Following the course of action this Court has taken in past cases by proceeding as a class action appears to be the superior approach in this case.  Accordingly, the Court certifies the following Rule 23(b)(3) class:

> All persons who are or were employed by Producers Dairy as Route Sales Drivers or Relief Drivers who worked in excess of eight (8) hours in a day and/or forty (40) hours in a work week in the State of California at any time from January 19, 2001, to the present who were not paid overtime compensation for those excess hours.

32

**V.   Notice**

The FLSA requires the Court to provide potential class members "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165, 170, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989). A court certifying a Rule 23(b)(3) class action "must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

**A.   Contents**

Plaintiffs have submitted a six-page document (the "Notice") they propose should be mailed to all putative class members and posted in Route Sales Drivers' workplaces. Nelson Decl. Ex. B. Defendant objects to the Notice on several grounds.

Defendant claims that, on page 1 of the Notice, the "TO" paragraph and the third paragraph of the Introduction refer only to Plaintiffs' state-law theory of the case. Nelson Decl. Ex. B at 1. The Court disagrees. These passages merely state generally the overtime violations that could give rise to liability under federal law (over forty hours in a week) or California law (over eight hours in a day or forty hours in a week). Defendant does not give any reason why the more detailed explanation of the law featured at section III of the Notice (Nelson Decl. Ex. B at 2) should also be included on the first

33

page.

Defendant also contends that the following portion of the Notice inaccurately states federal law:  "Under the FLSA, Plaintiffs seek payment of overtime compensation for these excess hours, *plus liquidated damages in the form of twice the overtime compensation owed*, or in the alternative, prejudgment interest." Nelson Decl. Ex. B at 2 (emphasis added).  Defendant cites in support only Section 216(b), which appears to be silent on the issue of whether double liquidated damages are available. Plaintiffs cite cases where courts have awarded employees liquidated damages equal to unpaid overtime wages under the FLSA. See, e.g., Angelo v. United States, 57 Fed. Cl. 100, 104 (Fed. Cl. 2003); Tho Dinh Tran v. Alphonse Hotel Corp., 281 F.3d 23, 35 (2d Cir. 2002).  Furthermore, the passage merely states what "Plaintiffs seek," not what they will actually receive.  Nelson Decl. Ex. B at 2.  To mitigate any risk that the reader might perceive that the Court has endorsed this interpretation, Plaintiffs include in section VII of the Notice a passage explicitly providing that the Court has not expressed an opinion regarding the merits of the case.  Nelson Decl. Ex. B at 4.

Defendant requests that the proposed notice delete any reference to the phrase "or equivalent position" and expressly exclude School Route Drivers and Specials Drivers.  Because the Court finds that School Route Drivers and Specials Drivers are not properly members of either the FLSA collective action or Rule 23 class action, these requests are well taken.  The Notice shall

34

1   reflect the Court's revised description of the class.

2       In its Opposition, Defendant asked the Court to delete

3   section VII of the Notice as unnecessary and lacking a rational

4   basis.  At oral argument, Defendant clarified that it had

5   intended to refer to section VIII, which states that Defendant

6   may not retaliate against employees who participate in the

7   lawsuit, not section VII.  The Court finds that section VIII is

8   accurate and that it helps to address the reluctance that

9   employees often have to suing an employer out of fear of

10  retaliation.  See Mullen, 186 F.3d at 625.

11      **B.   Distribution**

12      Plaintiffs ask that the Court order (1) the Notice sent to

13  all potential class members by first class mail and (2) that

14  Defendant post the Notice and provide multiple copies of the

15  Consent to Join form in each place where class members work.

16          **1.   Posting on Defendant's Premises**

17      Defendant objects to a requirement that it post the Notice

18  and provide copies of the Consent to Join form on the grounds

19  that it is "obviously punitive" and unnecessary.  First class

20  mail is ordinarily sufficient to notify class members who have

21  been identified.  Peters v. Nat'l R.R. Passenger Corp., 966 F.2d

22  1483, 1486 (D.C. Cir. 1992).  Sometimes courts have used other

23  methods, such as publication, broadcast announcements, or posting

24  to insure that potential class members receive sufficient notice.

25  See Six Mexican Workers, 904 F.2d at 1305 n. 2.

26      The Court doubts Defendant's unsupported claim that posting

in Defendant's workplace should be barred as punitive.  Multiple district courts have approved this method of notice, militating against the existence of a categorical bar against the practice. See, e.g., Johnson v. Am. Airlines, Inc., 531 F. Supp. 957, 961 (N.D. Tex. 1982) (finding notice reasonable when communicated by "direct mail, posting on company bulletin boards at flight bases and publishing the notice"); Lantz v. B-1202 Corp., 429 F. Supp. 421, 424 (E.D. Mich. 1977).

Plaintiffs claim that the names and addresses of certain employees do not appear on an employee list Defendant has produced (Supp. Nelson Decl. Ex. A) even though the employees are listed in Commission reports (Supp. Nelson Decl. Ex. B).  At oral argument Defendant argued that each of those employees was a statutory supervisor, not a Route Sales Driver, and therefore fell outside of the putative class.  It appears that each of the purportedly missing employees are indeed either Branch Managers or Branch Supervisors.  Hipp Decl. Ex. D (exhibit labeled "INTERROGATORY #9, 12, 13").

Nevertheless, some risk exists that the failure of Defendant to provide the contact information of potential class members will prevent them from receiving notice to which they are entitled.  Defendant would face only a small burden in being required to post the Notice and distribute the Consent to Join forms where Route Sales Drivers work.  See Oppenheimer Fund v. Sanders, 437 U.S. 340, 359, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (despite burden on plaintiff to provide for class notice,

1 court may properly require defendant to bear "insubstantial"

2 expenses). The Court finds that first class mail, combined with

3 posting in Route Sales Drivers' workplaces, provides the "best

4 notice practicable" to the potential class.

5 **2. Computer-readable Data File**

6 Plaintiffs also ask the Court to order Defendant to submit

7 a "computer-readable data file containing" contact information of

8 all potential class members. Mot. 19:10-12. Defendant's

9 Director of Administration states that Defendant "does not have a

10 computer readable data file containing employees' names,

11 addresses, and telephone numbers." Sewill Decl. ¶ 8. It is

12 unduly burdensome to require Defendant to do Plaintiffs' work for

13 them by creating a computer-readable file. Accordingly, the

14 Court will not order Defendant to produce one. Defendant must

15 provide, however, contact information for any potential class

16 members that it has not yet provided.

17 **VI. Class Counsel**

18 Plaintiffs ask that the Court certify "the law offices of

19 Beeson, Tayer & Bodine, specifically Robert P. Bonsall, Jason

20 Rabinowitz and Michael D. Nelson, as Class Counsel." Mot. 19:8-

21 10. Rule 23(a)(4)'s requirement that "the representative parties

22 will fairly and adequately protect the interests of the class"

23 also requires the Court to ensure that class counsel will

24 adequately represent the class. <u>Linney v. Cellular Alaska</u>

25 <u>P'ship</u>, 151 F.3d 1234, 1238-39 (9th Cir. 1998); <u>see</u> Fed. R. Civ.

26 P. 23(g)(1)(B). In appointing class counsel, the Court

37

1        (i) must consider:

2        •       the work counsel has done in identifying
                 or investigating potential claims in the
3                action,
         •       counsel's experience in handling class
4                actions, other complex litigation, and
                 claims of the type asserted in the
5                action,
         •       counsel's knowledge of the applicable
6                law, and
         •       the resources counsel will commit to
7                representing the class; . . .

8

9    Fed. R. Civ. P. 23(g)(1)(C).

10        The Court has reviewed the Complaint and the briefing in

11   support of class certification, which provide evidence that

12   Plaintiffs' counsel have investigated the class claims thoroughly

13   and are familiar with the applicable law.  Plaintiffs' counsel

     also has extensive experience litigating employment cases and
14
     class actions.  Rabinowitz Decl. ¶¶ 4-7; Nelson Decl. ¶¶ 4-6.
15
     Plaintiffs' counsel's effort so far in the prosecution of this
16
     action displays a willingness to commit resources to the
17
     representation.  The Court finds that Plaintiffs' counsel is
18
     adequate to serve as class counsel.
19
          **ACCORDINGLY:**
20
     1.   Plaintiffs' First Cause of Action is conditionally certified
21
          as a collective action under 29 U.S.C. section 216(b) with
22
          respect to the following class:
23
               All persons who are or were employed by
24             Producers Dairy as Route Sales Drivers and
               Relief Drivers who worked in excess of forty
25             (40) hours in a work week in the State of
               California at any time from January 19, 2002,
26             to the present and who were not paid overtime

                                  38

compensation for those excess hours.

2. Plaintiffs' Second through Sixth Causes of Action are certified as a Rule 23(b)(3) class action consisting of the following class:

> All persons who are or were employed by
> Producers Dairy as Route Sales Drivers or
> Relief Drivers who worked in excess of eight
> (8) hours in a day and/or forty (40) hours in
> a work week in the State of California at any
> time from January 19, 2001, to the present
> who were not paid overtime compensation for
> those excess hours.

3. The Named Plaintiffs Joe Romero, Raymond Jeanes, Larry Heffington, and Loren Portillo are certified as class representatives.

4. Robert P. Bonsall, Jason Rabinowitz, and Michael D. Nelson are certified as class counsel.

5. Plaintiffs shall alter the proposed Notice as follows:

    a. replace any phrase referring to "Route Sales Drivers and other equivalent positions" with the phrase "Route Sales Drivers and Relief Drivers."

    b. replace the definitions of the FLSA and Rule 23 classes with the Court's definition of each.

    c. indicate that class members may opt in to the FLSA action by submitting their Consent to Join form postmarked by September 8, 2006.

    d. indicate that class members may opt out of the Rule 23 class by submitting their Election to be Excluded form postmarked by September 8, 2006.

39

6.    By April 26, 2006, Plaintiffs shall provide the Court and
      Defendant with an updated copy of the Notice.

7.    By May 26, 2006, Defendant shall post the updated Notice and
      place multiple copies of the Consent to Join forms in all
      workplaces of Route Sales Drivers and Relief Drivers in a
      place visible and accessible to these individuals.

8.    The updated Notice shall be sent by first class mail to all
      potential class members by June 8, 2006.


IT IS SO ORDERED.

**Dated:  April 18, 2006**                          **/s/ Robert E. Coyle**
810ha4                                    UNITED STATES DISTRICT JUDGE